**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CHRISTOPHER SCOTT WEST,<br><br>　　　　　Defendant. | No. 19-CR-2013-CJW-MAR<br><br>**FORFEITURE ORDER** |

_____

**TABLE OF CONTENTS**

I.　　INTRODUCTION ……………………………………………………… 2

II.　　RELEVANT BACKGROUND …………………………………………… 2

III.　　DISCUSSION ……………………………………………………………… 3

　　　A.　　Is forfeiture moot? ……………………………………………………… 4

　　　B.　　Is a professional license "property" subject to forfeiture? ……………… 8

　　　C.　　Would forfeiture violate the Constitution? ………………………………11

　　　　　1.　　Eighth Amendment Analysis………………………………………11

　　　　　　　a.　　Would the forfeiture be grossly disproportional? …………12

　　　　　　　b.　　Would the punishment be more criminal than the crime? ..16

　　　　　2.　　Tenth Amendment Analysis…………………………………………17

IV.　　CONCLUSION ……………………………………………………………19

## I. INTRODUCTION

This matter is before the Court on the government's motion for a forfeiture hearing. (Doc. 44). The government seeks forfeiture of defendant's professional nursing licenses. The parties filed forfeiture briefs. (Docs. 47 & 48). On January 2, 2020, the Court heard argument from the parties. (Doc. 50). For the following reasons, the Court finds that defendant's professional nursing licenses are subject to forfeiture. The Court will, accordingly, enter a preliminary order of forfeiture.

## II. RELEVANT BACKGROUND

On March 5, 2019, a grand jury charged defendant with several offenses. (Doc. 2). These included Tampering with a Consumer Product (Count 1), in violation of Title 18, United States Code, Section 1365; and Acquiring and Attempting to Acquire a Controlled Substance by Misrepresentation, Fraud, Deception, or Subterfuge (Count 3), in violation of Title 21, United States Code, Sections 843(a)(3) and 846. (*Id.*). Each count carries a maximum fine of $250,000, for a total of $500,000. (Doc. 49, at 1).

The Indictment also contained a forfeiture allegation asserting that, due to defendant's criminal conduct, defendant must "forfeit to the United States of America . . . any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses." (Doc. 2, at 5). The forfeiture allegation went on to identify that "[t]he property to be forfeited includes, but is not limited to . . . [d]efendant's State of Iowa nursing licenses, numbers 1XXX06 and D1XXX06[.]" (*Id.*). The forfeiture allegation was brought pursuant to Title 21, United States Code, Section 853.

On August 1, 2019, defendant pled guilty to Counts 1 and 3 of the Indictment. (Docs. 28 & 30). On August 21, 2019, the Court accepted defendant's guilty plea. (Doc. 31). Defendant pled guilty pursuant to a written plea agreement. The plea agreement contained a stipulation of facts. (Doc. 48-1, at 3-16). In that section,

defendant stipulated that he used his licenses to gain access to vials of narcotic pain relievers fentanyl and sufentanil, Schedule II controlled substances, that were intended for patients. Defendant then substituted saline solution for most of the controlled substances contained in the vials and took the controlled substances for his own personal use. Defendant admitted that his conduct constituted a reckless disregard for the safety of the patients.

In the plea agreement, defendant admitted he "used and intended to use his two nursing licenses, State of Iowa license numbers 1XXX06 and D1XXX06, to commit and facilitate his crimes[.]" (*Id.*, at 16). In paragraph 21 of the plea agreement, however, the parties agreed to litigate whether defendant's licenses are subject to forfeiture. (*Id.*, at 21). Specifically, the parties agreed to litigate at a forfeiture hearing "(1) whether defendant's licenses are 'property' for purposes of 21 U.S.C. § 853(b) and, if so, (2) whether the Eighth and Tenth Amendments to the United States Constitution render forfeiture of defendant's nursing licenses unconstitutional in this case."

On November 6, 2019, defendant entered into a settlement agreement with the Iowa Board of Nursing, the State of Iowa administrative agency in charge of licensing professional nurses. (Doc. 47-1). Under the settlement agreement, defendant agreed "to immediately relinquish all right, title, and privilege to practice nursing in the State of Iowa by voluntarily surrendering all Iowa nursing licenses." (*Id.*, at 3). Defendant was obliged to "immediately return the license renewal card/s (sic) to the Board office" and barred from making "application for reinstatement of licensure" for at least a year from the date of the agreement. (*Id.*).

### III. DISCUSSION

Defendant does not deny—indeed, he stipulated to it in his plea agreement—that he used his nursing licenses to facilitate the offenses. Defendant nevertheless resists forfeiture of his nursing licenses on three grounds. First, defendant claims that forfeiture

is moot because he has surrendered his licenses to the state. (Doc. 47, at 2). Second, defendant argues that a professional license is not "property" under the terms of the forfeiture statute and therefore is not subject to forfeiture. (*Id.*, at 3). Third, defendant argues that forfeiture of his licenses would violated the United States Constitution. Under the last ground, defendant makes two arguments. (*Id.*, at 3-5). He argues that forfeiture of his professional licenses would constitutes an excessive fine in violation of the Eighth Amendment to the United States Constitution. He also argues that the federal government's forfeiture of his professional licenses would violate the Tenth Amendment to the United States Constitution because the right to regulate such licenses belongs to the State of Iowa. The Court will address each ground in turn.

### A. *Is forfeiture moot?*

Defendant argues that he has surrendered his nursing licenses and thus the issue of forfeiture is moot. (Doc. 47, at 2). Defendant asserts that there is no case or controversy and therefore no basis for the Court to review the case. Defendant concludes, therefore, that the Court should not enter an order of forfeiture against him.

The Court begins with the observation that defendant's argument appears to violate the plea agreement he reached with the government. In that plea agreement, the parties negotiated a settlement of the criminal charges against defendant that included an agreement that the parties would litigate two specific issues regarding forfeiture: (1) whether defendant's nursing licenses constitute "property" under the statute; and (2) whether forfeiture would violate the Constitution. (Doc. 48-1, at 21). That paragraph of the plea agreement did not use a term such as "including" to indicate that the two listed grounds are mere examples and that the parties could raise other legal challenges to the forfeiture. Rather, the language of the contract is precise in listing only two legal grounds. After entering into the plea agreement, defendant then negotiated the

settlement with the Iowa Nursing Board, apparently in secret,[1] that led to the "voluntary" surrender of his licenses. The government has not alleged a breach of the plea agreement, however, so the Court will not deny this argument on that ground.

Defendant argues that forfeiture is moot because he has surrendered his licenses to the state and therefore has no property interest to forfeit. Defendant misapprehends the legal implications of surrendering his licenses if, in fact, it has deprived him of all property interest in those licenses. In order to contest a forfeiture, a claimant must demonstrate both statutory and Article III standing. *See, e.g.*, *United States v. $746,198 in United States Currency*, 299 F. Supp. 2d 923, at 932 (S.D. Iowa 2004). A claimant bears the burden of establishing Article III standing, the threshold function of which is to ensure that the government is put to its proof only where someone acting with a legitimate interest contests the forfeiture. *See United States v. Eleven Million Seventy-One Thousand One Hundred & Eighty-Eight Dollars & Sixty-Four Cents*, 825 F.3d 365, 371 (8th Cir. 2016). To have standing, a claimant must "show a colorable interest in the property." *Id.* (quoting *United States v. Bearden*, 328 F.3d 1011, 1013 (8th Cir. 2003)); *see also United States v. Timley*, 507 F.3d 1125, 1129 (8th Cir. 2007) (noting that it is "well established that a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture.") (internal quotation marks and citation omitted). In short, if defendant is correct that he has no property interest in his nursing licenses, the implication is not that this Court lacks the power to enter a forfeiture order, but, rather, that defendant lacks the standing to challenge this Court's entry of a forfeiture order.

At the hearing, defendant argued that he has a "future interest" in his nursing licenses because he can in the future reapply to be licensed in the State of Iowa and if

---

[1] *See* Doc. 48, at 12 n.5 ("The State of Iowa had actual notice of the Indictment but nonetheless negotiated the settlement agreement in secrecy with defendant.").

that happens, apparently the state would use the same numbers. Defendant argued that this future interest gives him standing to challenge the forfeiture here. If defendant has a future property interest, then the Court agrees he has standing to challenge the forfeiture. If that is true, then the matter is not moot. In short, defendant cannot have it both ways. Either the licenses no longer exist and defendant has no property interest in them, in which case he does not have standing to challenge forfeiture, or the licenses still exist in some form and defendant has a property interest in them, in which case forfeiture is not moot. Defendant cannot avoid forfeiture here by claiming the licenses no longer exist but that, simultaneously, he has a future interest in those same licenses.

In any event, defendant also misunderstands the nature of a forfeiture allegation contained in an indictment. Under the forfeiture statute, "[a]ll right, title, and interest in property described in subsection (a) vests in the United States upon the commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 853(c). Thus, the government's interest in the property vested long before defendant surrendered his licenses. In other words, defendant had no property right to surrender at the time he surrendered the licenses to the State of Iowa because that property right was vested in the United States. At the hearing, defendant argued that this would turn the Constitution on its head by depriving him of both due process and the presumption of innocence. To the contrary, defendant has been afforded due process by notice of the forfeiture action in the indictment and the very ability to be heard at the hearing in this matter. That the government's property interest relates back to a time prior to defendant's charge does not mean defendant was deprived of his constitutional rights.

The government cited *United States v. Carrie*, 206 Fed. App'x 920, 923 (11th Cir. 2006), for the proposition that the government's right in the property is greater than that of a state entity who issued the license. (Doc. 48, at 13-14). That may be, but that issue is not before the Court. As the government notes, the State of Iowa can assert a

claim to defendant's licenses in an ancillary hearing if it wishes; what is being forfeited here is defendant's interest, if any, in the property. Exactly what interest defendant or anyone else has in the licenses is not currently before the Court. Rather, a preliminary order of forfeiture forfeit's defendant's interest in the property, whatever that interest may be.

Defendant analogizes this case to *United States v. Certificate of Deposit, No. 8101730026, First Nat'l Bank of Omaha*, 84 F.3d 1034, 1034 (8th Cir. 1996), stating that in that case the court found moot the forfeiture proceeding against a certificate of deposit ("CD") because the CD was redeemed while the forfeiture action was pending. (Doc. 47, at 2). Defendant oversimplifies the facts and misinterprets the holding of the case. In *Certificate of Deposit*, the defendant's wife filed a claim in an ancillary proceeding asserting an interest in a $7,000 CD. The court's docket sheet erroneously reflected the case as terminated after a bank moved for summary judgment regarding its interest in the CD. No activity followed for four years, after which the case was reopened when the error was discovered. The government then moved for default judgment and when the claimant did not timely respond, the district court entered judgment in favor of the United States, giving it property rights in the CD. The CD, however, had been redeemed years before and converted into cash, a different form of property. The Eighth Circuit Court of Appeals concluded that "[s]ince the government originally seized the CD, it is to blame for any mishandling, so it is appropriate to treat the CD's redemption as mooting the forfeiture proceeding." *Certificate of Deposit*, 84 F.3d, at 1034. In other words, although the court noted that redeeming the CD mooted the forfeiture proceeding, the court found that allowing the government to now pursue forfeiture of the "money previously represented by the CD" would require the "need for much more complex litigation." *Id.* More importantly, the holding of the case is not that the government could not pursue forfeiture because it was moot but, rather, that the

court dismissed the forfeiture action "because of the government's failure to prosecute" the forfeiture action. *Id*.

Here, the facts are dramatically different. *Certificate of Deposit* involved a civil in rem forfeiture action; this is a criminal forfeiture action. Defendant's professional licenses are not a form of negotiable instrument, like a CD, that can be converted to another form of property. Nor were they converted. Nor has the government here failed to prosecute its forfeiture claim against defendant's professional licenses. To the contrary, the government has diligently prosecuted forfeiture of defendant's professional licenses.

In short, the Court finds that the fact defendant surrendered his nursing licenses to a state administrative agency after the government's interest in them vested does not render moot the government's forfeiture action. Further, and in the alternative, the Court finds that if the defendant truly has no property interest in those licenses, then defendant lacks the standing to challenge the government's forfeiture action.

### B. *Is a professional license "property" subject to forfeiture?*

The government seeks forfeiture under Title 21, United States Code, Section 853. Under Section 853, any person convicted of a drug-law violation punishable by more than one-year imprisonment must forfeit to the United States, "irrespective of any provision of State law . . . any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation[.]" 21 U.S.C. § 853(a)(2). The statute provides a broad definition of "property" when describing what types of assets are within the section's scope: "real property . . . and . . . tangible and intangible personal property, including rights, privileges, interests, claims, and securities." *Id.*, at § 853(b); *see also United States v. Monsanto*, 491 U.S. 600, 607 (1989) (stating that in Section 853, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied,

or broader words to define the scope of what was to be forfeited.").

Defendant nevertheless argues that his nursing licenses are not property subject to forfeiture because the "explicit language . . . does not include professional licenses in the definition of property."[2] (Doc. 47, at 3). Section 853 uses the word "including" before listing "rights, privileges, interests, claims and securities" as examples of tangible and intangible personal property. The word "including" indicates that the words that follow are examples and not an exhaustive list. *See, e.g.*, *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 965 (2018) (noting that the word "includes" identifies a non-exhaustive list); *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 578 (1994) (holding that use of the word including is "illustrative and not limitative."); *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) (holding that "the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."); *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 189 (1941) (holding that the word "including" connotes an illustrative application of a general principle); *Ballanger v. Johanns*, 495 F.3d 866, 871 (8th Cir. 2007) (holding that the term "including" is merely illustrative); *Dan's Super Mkt., Inc. v. Wal–Mart Stores, Inc.*, 38 F.3d 1003, 1006 n.2 (8th Cir. 1994) (holding that the words, "including but not limited to, ordinarily mean that a list is incomplete and only illustrative in nature); *P.R. Mar. Shipping Auth. v. I.C.C.*, 645 F.2d 1102, 1112 (D.C. Cir. 1981) ("It is hornbook law that the use of the word 'including' indicates that the specified list of carriers that follows is illustrative, not exclusive."); *see also* ANTONIN SCALIA & BRYAN A. GARDNER, READING LAW 132-33

---

[2] The Court notes that it appeared that defendant largely abandoned this argument at the hearing, stating multiple times things like the defendant would never argue the government could not seize a license that had not been revoked and asserting that if the licenses were active, they would "of course" be subject to forfeiture." Nevertheless, the Court will address this issue because defendant did not explicitly abandon the argument.

(2012) (stating that the word "including" "does not ordinarily introduce an exhaustive list" except in the area of patent law). Thus, the omission of an explicit reference to professional licenses in the list does not mean that a professional license is not property within the broad definition of the statute.

And, indeed, the United States Supreme Court has held that professional licenses are considered property protected by the Fourteenth Amendment. *See Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232, 239 (1957); *see also In re Poole*, 222 F.3d 618, 620 (9th Cir. 2000) (holding that a physician has a constitutionally protected property interest in his or her medical license). Iowa law also recognizes professional licenses as a form of property. *See, e.g.*, *State v. Otterholt*, 234 Iowa 1286, 1290, 15 N.W.2d 529, 531 (1944) (holding that a license to practice granted by the state "is a privilege or right" which cannot be abridged without due process); *Gilchrist v. Bierring*, 234 Iowa 899, 911, 14 N.W.2d 724, 730 (1944) ("Whether the right to practice medicine be classed as a property right, strictly speaking, or as a mere privilege, is not material; for, whichever name be given it, it is a valuable right which cannot be taken away without due process of law[.]").

It follows, then, that a professional license falls within the broad definition of property subject to forfeiture under Section 853. Although there is no controlling authority from the Eighth Circuit Court of Appeals, and frankly little case law at all on this issue, two other courts of appeal have specifically held that a professional license constitutes property subject to forfeiture under Section 853. *See United States v. Singh*, 390 F.3d 168, 189 (2d Cir. 2004) (holding that a medical license was property subject to forfeiture under Section 853); *United States v. Dicter*, 198 F.3d 1284, 1290 (11th Cir. 1999) (same).

At the hearing, defendant emphasized that *United States v. Singh* and *United States v. Dicter* involved active medical licenses, not medical licenses that have been revoked.

This distinction goes only to defendant's claim that there is no property to forfeit—his mootness argument. If there is no license in existence, then defendant lacks standing to challenge the government's action in attempting to forfeit a non-existent license. If defendant's conflicting assertion is true—that he has some future property interest in the licenses that gives him standing—then the licenses do exist and this case is not materially distinguishable from *Singh* and *Dicter*.

Thus, the Court finds that defendant's nursing licenses fit within the broad definition of property under Section 853 and are subject to forfeiture.

### C. *Would forfeiture violate the Constitution?*

Defendant argues, in the alternative, that if the Court finds that his nursing licenses constitute property subject to forfeiture, that the Court should nevertheless find that forfeiture of his licenses would violate the United States Constitution. (Doc. 47, at 3). Defendant asserts that forfeiture would violate the Eighth Amendment's prohibition against excessive fines. (*Id.*, at 4-5). Defendant also argues that the federal government's "efforts to regulate [defendant's] license[s] through this forfeiture action violate the Tenth Amendment" because it would usurp powers reserved to the states. (*Id.*, at 3-4).

#### 1. *Eighth Amendment Analysis*

The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. AMEND. VIII. Criminal forfeiture is a fine within the meaning of the Eighth Amendment's excessive fines clause. *Alexander v. United States*, 509 U.S. 544, 558-59 (1993). Courts must undertake "a fact-intensive analysis under the Eighth Amendment Excessive Fines Clause to ensure that the forfeiture is not an excessive penalty, and courts may forfeit less than what the statute requires if necessary to preserve the forfeiture by tailoring it to fit within the broad boundaries of constitutional

proportionality." *United States v. Bieri*, 68 F.3d 232, 236 (8th Cir. 1995) (internal quotation marks and citation omitted). The "principle of proportionality" embodied in the Excessive Fines Clause requires that "[t]he amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). Nevertheless, the Constitution does not require strict proportionality, meaning that the fine must be equal to the crime; rather, to violate the Constitution the fine must be "grossly disproportionate to the gravity of the defendant's offense." *Id.*, at 336-37.

The United States Supreme Court has declined to establish a test for determining proportionality, but Eighth Circuit precedent provides some guidance. First, the defendant must make a prima facie case of "gross disproportionality." *United States v. Alexander*, 32 F.3d 1231, 1235 (8th Cir. 1994). Second, "the [E]ighth [A]mendment demands that a constitutionally cognizable disproportionality reach such a level of excessiveness that in justice the punishment is more criminal than the crime." *Id.*, at 1237 (alterations in original, internal quotation marks and citation omitted).

### a. *Would the forfeiture be grossly disproportional?*

In determining whether a forfeiture amount is grossly disproportional to the offense, the Court can consider a wide range of factors. In *United States v. Bajakajian*, the Supreme Court examined the nature of the defendant's offense, whether the offense was related to any other illegal activities, the gravity of the offense as measured by the Guidelines sentence, and the harm the defendant caused. *See Bajakajian*, 524 U.S. at 337–39. The amount of the fines available by statute are similarly relevant in determining proportionality. *United States v. Hull*, 606 F.3d 524, 529 (8th Cir. 2010). If the value of the property forfeited is within the range of the fines under the sentencing guidelines, then the forfeiture is "almost certainly not excessive." *United States v. Sherman*, 262 F.3d 784, 795 (8th Cir. 2001). Finally, the Court may also consider "the

personal benefit reaped by the defendant" and "the defendant's motive and culpability." *United States v. Dodge Caravan Grand SE/Sport Van, VIN NO. 1B4GP44G2YB7884560*, 387 F.3d 758, 763 (8th Cir. 2004) (quoting *Bieri*, 68 F.3d, at 236). Successful challenges to proportionality of criminal forfeiture are "exceedingly rare." *United States v. Paton*, 535 F.3d 829, 837 (8th Cir. 2008); *see also United States v. Garth*, 929 F.3d 967, 969 (8th Cir. 2019) ("An Eighth Amendment violation may be found only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."); *United States v. Myers*, 21 F.3d 826, 830 (8th Cir. 1994) (noting that, given the broad language of Section 853(a) and large monetary fines authorized by Congress, "a successful proportionality challenge to criminal forfeiture will be a rare occasion").

The first factor is the nature of defendant's offense. Using his nursing licenses, defendant accessed controlled substances and diverted them from patients who were suffering pain so he could use the controlled substances to get high. The conduct lasted for approximately seven or eight months, from February 2018 through September 7, 2018. (Doc. 49, at PSR ¶¶7-9).[3] The total amount of narcotics involved was not large. On occasion, defendant administered unnecessary controlled substances to patients at least in part so that there would be narcotics left over for his personal use. (*Id.*, at PSR ¶¶ 23-25).

The second factor is whether the offense was related to any other illegal activities. When law enforcement officers searched defendant's house, they found him in possession

---

[3] *But see* (Doc. 49, at PSR ¶ 22) (noting that defendant told the resident surgeon that he had been diverting and using controlled substances for the last eight to nine months). To the extent that the Court cites to and relies on the PSR, it does so without relying on any portion to which defendant has lodged an objection.

of seven firearms. (*Id.*, at PSR ¶ 20).[4] Defendant was then an unlawful user of controlled substances. It is a federal offense to possess firearms as an unlawful drug user. *See* 18 U.S.C. § 922(g)(3).

The third factor is the gravity of the offense as measured by the guidelines. For purposes of an excess fine claim, the most relevant guidelines are those pertaining to the fine. Here, the crimes of conviction carry statutory fines of up to $500,000.00. According to the presentence investigation report, the advisory guideline fine range is $25,000 to $250,000. (Doc. 49, at PSR ¶ 136). Trying to determine whether forfeiture of defendant's nursing licenses is proportionate to the fine range, however, is difficult. Neither party presented any evidence of the market value of a nursing license. Nor is there an easy method to calculate the marginal value of a nursing license in relation to defendant's earning capacity versus other lines of employment available to defendant. The Court finds this factor to be of little help here.

The next factor is the harm defendant caused. Defendant caused direct harm to patients. At least one patient suffered complications from surgery and has lasting damage that, according to the medical opinion of the treating doctor, was likely due to defendant's insistence on using an unnecessary narcotic at least in part so there would be some left over for defendant's personal use. (*Id.*, at PSR ¶¶ 23-25). A number of women going through labor suffered greater pain, ultimately needing general anesthesia, because the narcotics administered to them were insufficient; defendant claimed at the time he was providing the patients fentanyl for their epidural insertions when was actually diverting that drug for his personal use. (Doc. 49, at PSR ¶¶ 45-49).[5] On another

---

[4] Although defendant objected to this paragraph of the presentence investigation report ("PSR"), his objection was one of relevance only. The Court finds his unlawful possession of firearms relevant here.

[5] Defendant has lodged objections to these paragraphs as well, but on grounds of relevancy, wanting inclusion of an exact date of one incident, and arguing that removal of husbands from

14

occasion his theft of narcotic pain relievers prevented the administration of the pain reliever to a patient in extreme pain. (*Id.*, at PSR ¶ 61). Defendant also caused direct harm to the hospital in the value of the controlled substances he adulterated and had to be replaced. (*Id.*, at PSR ¶¶ 27-36). Defendant also caused indirect harm to the reputation and good will of the hospital and the doctors with whom defendant worked.

Another factor is the personal benefit to defendant from the crime and his motivation for the crime. The benefit to defendant, and his motivation for committing the crimes, was the ability to get high on the controlled substances he stole from patients.

Defendant cites a case out of the Second Circuit Court of Appeals for the proposition that the Court should also consider whether forfeiture would deprive the defendant of his livelihood. (Doc. 47, at 5) (citing *United States v. Viloski*, 814 F.3d 104, 111-12 (2d Cir. 2016). Defendant argues that forfeiture of his professional licenses would be excessive because his "livelihood depends on the ability to practice nursing." (*Id.*).

In *United States v. Viloski*, the court imposed a forfeiture judgment of more than $1.2 million on a defendant involved in a fraud scheme. 814 F.3d, at 107. The court noted that the effect of the forfeiture on a defendant's livelihood is not a distinct factor, but must be weighed along with all of the other factors. In other words, the court observed that "a forfeiture that deprives a defendant of his livelihood might nonetheless be constitutional, depending on his culpability or other circumstances." 814 F.3d, at 112. In *Viloski*, the court found that the forfeiture did not constitute an unconstitutionally excessive fine. In any event, *Viloski* is not, of course, binding on this Court.

Here, defendant presented no evidence that loss of his professional licenses would

---

delivery rooms was common, none of which affects the facts upon which the Court is relying here. The Court also notes that the final PSR added the exact date requested and the rest of the facts contained in these paragraphs are also in paragraphs MM through OO of the plea agreement defendant signed. (Doc. 48-1, at 12-13).

prevent him from earning a livelihood upon release from prison. It might prevent him from obtaining employment as a licensed nurse, true, but there are other jobs, including jobs in the health care profession, defendant could work that would not require nursing licenses. *See Dicter*, 198 F.3d, at 1292 n.11 (rejecting a doctor's claim that forfeiture of his medical license would deprive him of his livelihood, observing that "most people earn a living without a medical license.").

Considering all of the factors in play here, the Court finds that defendant has failed to carry his burden of making a prima facie case that forfeiture of defendant's nursing licenses would constitute a grossly disproportionate fine. Defendant's nursing licenses were the key to his access to controlled substances. Defendant used his position of trust to cause patients to receive unnecessary and harmful pain narcotics and to go without necessary pain narcotics so that he could use the controlled substances himself. Forfeiture of the professional licenses that enabled defendant to commit these serious offenses is not grossly disproportionate to the gravity of defendant's criminal conduct.

### b. *Would the punishment be more criminal than the crime?*

Even if the Court found that defendant made a prima facie case of gross disproportionality, the Court would then have to determine if the degree of disproportionality is so great that the punishment is more criminal than the crime. The Court finds that it is not. The Court could find no guidance in other cases on how a court is to determine when a grossly disproportionate fine nevertheless is not so grossly disproportionate that it constitutes a crime greater than the crime of conviction. Here, though, defendant's conduct constituted a very serious crime that placed patients in grave danger and caused them unnecessary suffering. Even were the Court to conclude that the forfeiture of his nursing licenses was grossly disproportionate to the crime (which the Court does not find), the Court cannot conclude that it is so disproportionate to constitute a crime greater than the one defendant perpetrated. Forfeiture takes from defendant only

property; defendant deprived patients of their health, caused them to suffer pain, and risked their safety for his own personal gratification.

Thus, the Court finds that the forfeiture of defendant's nursing licenses does not constitute an excessive fine in violation of the Eighth Amendment.

### 2. *Tenth Amendment Analysis*

Finally, defendant argues that the federal government's forfeiture of his professional licenses would violate the Tenth Amendment because it would invade the state's right to regulate professions. (Doc. 47, at 3-4). The Tenth Amendment provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. AMEND. X. Iowa law governs the licensing of registered nurses in the state. Iowa Code § 147.2. It also governs the revocation or suspension of such licenses. Iowa Code § 147.55.

Defendant does not cite any case holding that forfeiture of a professional license violates the Tenth Amendment. In contrast, the government cites cases where courts have flatly rejected Tenth Amendment challenges to forfeiture. (Doc. 48, at 10-12). In *Dicter*, the court rejected this argument when the government forfeited the defendant's medical license, noting that the forfeiture did not interfere with the state's issuance of that license in the past or the future, nor prevented the state itself from revoking the license or taking other action against the defendant. 198 F.3d, at 1291-92. In *Singh*, 390 F.3d, at 189-91, the court similarly rejected a Tenth Amendment challenge, citing *Dicter*. *See also United States v. All Beneficial Interest in that Certain Installment Note Dated Jan. 12, 1987, in Principal Amount of $92,500*, No. 91-16427, 1992 WL 332071, at *1 (9th Cir. 1992) (unpublished) (rejecting Tenth Amendment challenge to a drug-crime forfeiture action). Indeed, this Court has previously rejected a Tenth Amendment challenge to a forfeiture action, finding that the federal government's forfeiture authority

under the Commerce Clause is a constitutional exercise of power. *See United States v. One Parcel of Property Located at 1606 Butterfield Road, Dubuque, Iowa*, 786 F. Supp. 1497, 1505 (N.D. Iowa 1991).

Here, the Court finds that the government's forfeiture action does not violate the Tenth Amendment. The forfeiture action takes from defendant a piece of property—his nursing licenses. The State of Iowa is free to reissue a license to defendant in the future, and is free to take whatever other action it wishes to take, if any, about defendant's authority to practice as a licensed nurse in the future. The Court also finds that Congress is authorized under the Commerce Clause (U.S. CONST. ART. I, § 8), to enact laws, including forfeiture laws, in relation to drug-law offenses. *See* 21 U.S.C. § 853(a)(2) (providing that any person convicted of a drug-law offense "shall forfeit to the United States, *irrespective of any provision of State law* . . . any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation[.]") (emphasis added).

Again, at the hearing, defendant insisted there was a connection between the status of his license being revoked and the Tenth Amendment argument, repeatedly asking the Court to respect the Tenth Amendment. The Court rejects this argument. The Court has found that Congress has the right under the Commerce Clause to enact forfeiture laws for property used to facilitate drug offenses. Whether defendant's property interest in his nursing licenses is a future interest, as he claims, or a present interest, it is nonetheless a property interest subject to forfeiture under a proper exercise of power under the Commerce Clause. Whether the state has revoked his licenses does not implicate the Tenth Amendment. The government's action here is against whatever property right, if any, defendant has in the licenses. The forfeiture action does not implicate the state's interest in the licenses, nor does it interfere with the state's authority to determine whether to reissue defendant a license in the future.

Thus, the Court rejects defendant's Tenth Amendment challenge to the forfeiture of his nursing licenses.

## IV.  CONCLUSION

For these reasons, the Court finds that defendant's nursing licenses are subject to forfeiture under Title 21, United States Code, Section 853, and the Court will enter a preliminary order of forfeiture of those licenses.

**IT IS SO ORDERED** this 3rd day of January, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa